**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., *et al.*,<br><br>              Plaintiffs,<br><br>       *v.*<br><br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.*,<br>              Defendants. | Case No. 20-cv-03812-APM |

**DECLARATION OF MARIA ODOM IN SUPPORT OF PLAINTIFFS'
MOTION FOR A STAY OF EFFECTIVE DATES UNDER 5 U.S.C. § 705 OR, IN THE
ALTERNATIVE, PRELIMINARY INJUNCTION**

## DECLARATION OF MARIA ODOM, ESQ.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury as follows:

1. I, Maria Odom, submit this declaration in support of Plaintiffs' motion for preliminary injunction in the above-captioned case. I am over the age of 18, have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would testify competently as set forth below.

2. I am an attorney licensed to practice law by the State of Georgia. Since 2017, I have been Vice President for Legal Programs (formerly named Legal Services) at Kids in Need of Defense (KIND).

3. Prior to joining KIND, I served as the U.S. Department of Homeland Security Citizenship and Immigration Services Ombudsman from September 2012 to January 2017. In September 2013, I was appointed as Chair of the U.S. Department of Homeland Security's Blue Campaign to Combat Human Trafficking. From December 2009 to September 2012, I served as Executive Director of the national legal services organization Catholic Legal Immigration Network, Inc. (CLINIC). Prior to that role, I was an immigration attorney in private practice for over a decade.

4. In my current role, I lead KIND's Legal Programs Team, comprising approximately 225 attorneys, social services professionals, and support staff across KIND's Headquarters and ten field offices, located throughout the country in Atlanta, GA; Baltimore, MD; Boston, MA; Houston, TX; Los Angeles, CA; New York, NY; Newark, NJ; San Francisco and Fresno, CA; Seattle, WA; and Washington, DC and Northern Virginia; with additional staff in El Paso, TX and San Diego, CA. These field offices serve children through a combination of direct representation and the recruiting, training, and mentoring of pro bono counsel.

5.     KIND is the leading national organization advocating for the rights of unaccompanied migrant and refugee children in the United States. Since 2009, KIND has received referrals for more than 21,000 children from 77 countries. KIND has trained and mentored pro bono attorneys at more than 670 law firms, corporate legal departments, law schools, and bar associations. In 2019, 2,643 children were referred to KIND for legal services; approximately 5,500 children currently have open cases with KIND. In addition to legal services and pro bono mentoring, KIND advocates for laws, policies, and practices to improve the protection of unaccompanied children. KIND promotes durable solutions to child migration that are grounded in the best interests of the child and seek to ensure that no child is forced to involuntarily migrate.

**KIND's Legal Services for Children**

6.     Unaccompanied children who arrive in the United States fleeing abuse, neglect, persecution, or other harm are among the most vulnerable people in the immigration system. Yet around half of those children do not have legal representation. By some estimates, unaccompanied children who do have legal representation are five times more likely to be granted protection from deportation than are unrepresented children.

7.     KIND and our pro bono attorneys represent children before multiple tribunals, including U.S. Citizenship and Immigration Services (USCIS), state and federal courts, and the immigration courts and Board of Immigration Appeals (BIA) of the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR). In 2019, 93% of KIND's completed cases resulted in a child receiving immigration relief, most often asylum or protection as a special immigrant juvenile (SIJ).

8.     Among other sources of support, KIND is a subcontractor to the Vera Institute of Justice,

which holds a contract with the Department of Health and Human Services (HHS), Office for Refugee Resettlement (ORR), to provide legal services to unaccompanied children who are or were in ORR's custody. Some of the children encountered by KIND staff at shelters are referred to KIND for further legal representation; other children are referred to KIND via other Vera Institute subcontractors or other agencies and partners. KIND staff interview children to identify whether a potential client could benefit from immigration legal services. If so, a child may be served either through direct representation by KIND staff or by a pro bono attorney under KIND's mentorship.

9. When initiating direct representation, a KIND staff attorney enters into a retainer agreement with the child client, setting forth the scope of the representation, including forms of relief that KIND anticipates pursuing on the child's behalf. KIND never charges for its legal services, but direct services clients are advised that they may be required to cover application fees, filing fees, or biometrics fees, if those fees are not waived.

10. KIND places more than half of the cases with pro bono attorneys for representation. KIND's pro bono attorneys most often work at large, medium, or small law firms, but include corporate law department attorneys, solo practitioners, and retired attorneys. For children placed with attorneys for pro bono representation, KIND maintains a training and guidance relationship with the pro bono attorney, but generally does not enter into an attorney-client relationship with the child (except in rare circumstances as co-counsel with the pro bono attorney). The pro bono attorney's representation agreement with the client generally will describe the scope of representation and the forms of relief the attorney will pursue. KIND provides pro bono attorneys with guidance on filing fees and seeking fee waivers, but has generally left it to the pro bono attorneys to determine whether a client would be asked to pay any unwaived application or

filing fees, biometrics fees, or other costs.

11.     The children KIND and its pro bono attorneys serve have been placed in removal proceedings before EOIR. Starting almost immediately after they seek protection at the border, these children may be scheduled for initial hearings in removal proceedings before an immigration judge (IJ). Many of the children should qualify for forms of protection, including asylum or SIJ status (SIJS), that provide relief from deportation.

12.     Most of the children served through KIND obtain relief from removal at the immigration court level. This occurs either when the immigration judge grants a child's application for protection, or when the immigration judge dismisses the removal proceedings on the basis that USCIS has granted a child's application for protection. However, an appeal may ensue where DHS wishes to challenge the judge's grant of relief, or if the judge has denied relief.

13.     KIND's standard form of engagement letter does not encompass representation at the BIA appeal stage. However, KIND has to this point generally been able to continue to represent (or to place a case with a pro bono attorney for) a child who wishes to take an appeal, where an appeal is legally warranted.

***Asylum and Associated Fees***

14.     Under the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), unaccompanied children are entitled to have their asylum claims considered, in the first instance, by trained USCIS asylum officers through a non-adversarial interview; their removal proceedings are to remain in abeyance during this process. In such cases, attorneys represent children before both the immigration court and USCIS. If USCIS denies asylum, the child can again seek asylum and the related forms of protection (withholding of removal and protection under the Convention Against Torture) before the IJ as a defense to removal. If all relief is

denied and a removal order is entered, the child may make a motion to reopen or reconsider, or may appeal the decision to the BIA. Further, a child may petition a federal circuit court for review of an adverse BIA decision. Over the course of this process, a child requires an attorney's assistance to prepare submissions and testimony, assemble evidence on country conditions and other matters, seek out testimony from experts and other witnesses, and prepare legal briefing and argument.

15. Historically, no filing fee was required for an asylum application. Under a recently finalized USCIS rule that is subject to a preliminary injunction, most asylum applications would be subject to a $50 filing fee, though unaccompanied children's filings are exempt. *See* 8 C.F.R. § 106.2(a)(2). All unaccompanied children should be permitted to pursue asylum through the USCIS process, without a fee. However, EOIR has adopted the view that unaccompanied children may lose the benefit of the solicitude due to unaccompanied children should the child either join a parent or reach age 18, and increasingly has adjudicated unaccompanied children's claims in immigration court—even in cases where their applications are pending before USCIS. *See Matter of M-A-C-O-*, 27 I.&N. Dec. 477 (BIA 2018). In other cases, the asylum office will not grant asylum and will instead refer the claim to EOIR. In yet other cases, a child is initially placed in removal proceedings along with a parent or legal guardian, but later becomes unaccompanied; EOIR and DHS are inconsistent in according such children the full protections that are to be given to unaccompanied children. For these and other reasons, EOIR hears the asylum claims of many children who reached the U.S. as unaccompanied children. It is unclear to KIND whether, under the Final Rule, EOIR plans to charge the $50 asylum fee in any of these circumstances.

16. Historically, motions to reopen or reconsider asylum denials before the immigration

judge or BIA entailed no fee if based exclusively on asylum (8 C.F.R. §§ 1003.8(a)(2); 1003.24(b)(2)); however, a fee could apply if a child's motion included other bases. The new rule maintains this distinction. Moreover, appeals to the BIA have entailed a filing fee, even where the underlying relief at issue was asylum. *See id.* KIND's clients should generally be eligible for waivers of applicable fees, but historically, the fees have been low enough that many attorneys, including KIND's pro bono attorneys, have chosen to advance the fees rather than spend the time and resources, and incur scheduling risk, to pursue a fee waiver.

***SIJS and Associated EOIR Fees***

17.  Other children KIND serves are eligible for relief under the SIJS statute, which provides protection for certain victims of parental neglect, abuse, abandonment, and other similar harm. Qualifying for SIJ protection requires an order from a state juvenile court, addressing the child's needs for dependency or placement with a guardian, and making certain findings with respect to the child's best interests (*see* 8 U.S.C. § 1101(a)(27)(J)). Based on that state court order, an attorney then files the child's petition for SIJ status with USCIS. Once that application is approved—and potentially after a years-long wait for a visa to become available, as visas are limited by country of origin in a given year—either USCIS or EOIR may adjudicate a child's application to adjust status to lawful permanent resident. While a child pursues this relief, his or her case generally remains on the immigration court's docket, and some judges have entered removal orders even in cases where a child has an approved SIJ petition and is simply awaiting a visa number to obtain permanent resident status. In such cases, KIND and our pro bono attorneys have vigorously advocated before the immigration judge and the BIA against ordering a child removed before he or she can obtain protection for which he or she is eligible.

18.  SIJ beneficiaries are subject to a filing fee for the application for adjustment of status

(Form I-485). Depending on multiple factors (including the immigration prosecutor's position on the matter), a SIJS recipient may file the adjustment of status application with either USCIS or EOIR. Prior to USCIS's 2020 change in its fee rules, children with SIJ status were eligible to request, and frequently were granted, a waiver of the adjustment application fee and fees for ancillary forms (such as requests to waive certain waivable bars to adjustment of status). Under the 2020 USCIS schedule, fee waivers for a child with SIJ status applying to adjust to lawful permanent resident would be available only in quite limited circumstances. (That fee schedule is currently enjoined by two federal courts, allowing KIND's clients to continue to seek fee waivers.) When a child's SIJ-based adjustment application is to be adjudicated by the IJ, the same application fee must be paid to USCIS. A motion for the IJ or BIA to reopen or reconsider an adverse order, based on eligibility to adjust status, would also entail filing fees, as would an appeal to the BIA from a denial and removal order by the IJ.

**The EOIR Fee Rule**

19.     I am familiar with the EOIR Notice of Proposed Rulemaking (the Notice) and the Final Rule that are at issue in this litigation. Many provisions of the Final Rule would adversely affect KIND, our clients, and the ability of KIND and our pro bono attorneys to provide legal services to unaccompanied children.

20.     On March 5, 2020, KIND signed a letter authored by CLINIC, asking EOIR for an additional 30 days to comment on the Notice. KIND signed CLINIC's second letter seeking more time on March 23, 2020.

21.     In March 2020, KIND shifted to entirely virtual operations due to the Covid pandemic. In addition to our staff moving to remote work, our operations were substantially disrupted: attorneys were unable to meet with clients in the ORR shelter system; and state courts,

immigration courts, and USCIS offices shut down or moved to virtual operations—at many points in a chaotic fashion. At the same time, the pandemic response impeded release from ORR shelters for some children we serve, requiring efforts by KIND attorneys to secure those children's release to their sponsors. KIND's Strategy and Special Programs Team, which plays a large role in developing our comments to proposed regulations, was substantially occupied during this time providing training, guidance, and support to our front-line attorneys in responding to these and other Covid-related challenges. In short, the Covid disruption made it that much more difficult to analyze and respond to the Proposed Rule in March 2020.

22. Nonetheless, on March 30, 2020, KIND filed a comment letter on the Notice, objecting to many respects in which the rule would burden unaccompanied children seeking asylum and other protection in immigration court.[1] The letter noted that children's asylum claims often involve cutting-edge, rapidly changing legal issues, such that appeals and motions to reopen or reconsider are frequently needed to bring case outcomes in line with the evolving state of the law. KIND noted the substantial uncertainty around the availability of waivers for astronomical new fees. We pointed to flaws in the "fee study" allegedly justifying the new fees, highlighting questionable assumptions and a lack of transparency in the model; argued that EOIR's fee schedule could not be justified the way a fee-funded agency like USCIS justifies setting its fees; and noted EOIR's ample statutory authority to set lower fees to balance impacts on applicants. The letter discussed the proposed rule's lack of clarity on fee waivers even as the availability of waivers would become ever more important. KIND's comments also addressed the unfairness and burden posed by the fee to asylum seekers generally, and asked that EOIR clarify that the

---

[1] Available at https://supportkind.org/wp-content/uploads/2020/03/EOIR-fee-review-final-3.30.20.pdf or from https://beta.regulations.gov/document/EOIR-2020-0001-0001/comment.

8

$50 asylum fee, to which KIND generally objected, would not be charged for unaccompanied children's asylum applications.

**Effect of the Rule**

23.     In general, under existing law, EOIR fees have been reasonable and stable for many years. Most motions and appeals that might be needed in KIND cases were either not subject to a fee; subject to a fee waiver that, for the children KIND serves, would routinely be granted; or were low enough that KIND or a pro bono attorney could choose to pay the filing fee, on the understanding that the time spent completing the fee waiver application would represent a greater burden to the attorney than simply paying the fee. Legal ethics rules allow pro bono attorneys to cover such filing fees for indigent clients. *See, e.g.*, ABA Model Rule of Professional Responsibility 1.8(e)(1), (2).

24.     Another reason KIND or a pro bono attorney would often advance an EOIR fee is the potential for prejudice if a fee waiver is denied. Unlike USCIS, EOIR provides no formal written guidance on the standards under which fee waiver applications are to be decided, increasing the potential for variable and inconsistent results among IJs and the BIA. But if a fee waiver *is* denied, a time period to make the underlying filing may have run, prejudicing the client; that is, the client may not be allowed to re-file with the fee, having waited for adjudication of the fee waiver. For example, there is only a 30-day period to file an appeal, and it is not always feasible to file the appeal, receive a fee waiver determination, and then re-file with a fee, if necessary, all within 30 days. Given this dynamic, an attorney who has the means to advance the fee may reasonably decide to forego the waiver, and KIND and its pro bono attorneys have done so in numerous cases.

25.     The Final Rule upends our EOIR practice in each of these respects: More filings carry

9

costs; fee waivers are potentially less available; and the costs are so high that KIND and our pro bono attorneys will more frequently need to pursue fee waivers, or limit the scope of representation to be exclusive of appeals and post-decision motions, because children will be unable to afford the fees, and advancing the filing fee would be cost-prohibitive.

    a. *New fees.* If the USCIS fee schedule goes into effect, EOIR will also be charging a $50 fee for asylum applications. While the USCIS rule exempts unaccompanied children from this fee, a series of recent EOIR and USCIS policies and the decision in *Matter of M-A-C-O-*, 27 I.&N. Dec. 477 (BIA 2018), have the effect of limiting which children EOIR and USCIS permit to proceed as unaccompanied children. As explained in paragraph 15 *supra*, it is unclear in the Final Rule whether or in what circumstances EOIR might impose the asylum application fee on these children.

    b. *Diminished and unclear fee waiver availability.* It stands to reason that, with fees rising by a factor of 8 or more, EOIR will receive more fee waiver requests; it is unclear if they will be adjudicated as quickly, or as favorably, as in the past. USCIS, in its enjoined 2020 fee schedule rule and in other policies, has substantially narrowed the standards for granting fee waivers; the Final Rule does not address whether immigration judges may deny fee waivers using similar rationales.

    c. *Difficulty advancing fees.* As described in paragraph 23 *supra*, pro bono attorneys frequently advance or donate filing fees to clients, as allowed by applicable legal ethics rules. KIND itself is a nonprofit organization largely dependent on private funding and donations; our pro bono attorneys include solo practitioners and semi-retired attorneys who donate their services to help children. The fee increases—most notably, the increase in the appellate filing fee to $975—take these fees from the realm of *de minimis* for most

attorneys to cover, and into the domain of a substantial expense. The expense is magnified in the common situation where an attorney represents siblings who are required to make separate filings based on a common set of claims to protection.

26. These changes will affect a substantial number of children served by KIND and, to the extent that KIND and its pro bono attorneys continue to attempt to cover some fees, will add up to a large expense. I have reviewed KIND's case management database records to identify KIND filings that would be affected by the changes. From January 1, 2016 through December 15, 2020, KIND and our pro bono attorneys have filed at least:

   a. 57 BIA appeals. If these appeals had been subject to the new filing fee, and if fee waivers were not granted, the rule would represent an increase of up to $49,305 over the prior cost for the filing of those appeals ($865 increase per filing);

   b. Four motions to reopen or reconsider at the BIA level. If filing fees were not waived, motions subject to a filing fee[2] filed under the rule would represent an increase of as much as $3,140 over the prior cost ($785 increase per filing); and

   c. 71 motions to reopen or reconsider at the immigration court level. If these had been subject to the new filing fee, and if fee waivers were not granted, the rule would represent an increase of $2,485 over the prior cost ($35 increase per filing).

27. KIND has already diverted resources from our other work to prepare training materials and provide technical assistance to our staff and pro bono partners on the forthcoming changes to the fee rule, on top of many other EOIR rulemakings and policy changes in the last year that have necessitated updated guidance and training. If the Final Rule goes into effect, KIND will

---

[2] Under both prior law and the Final Rule, a filing fee is required except where the motion is based exclusively on an application without a filing fee, such as an unaccompanied child's asylum claim that requires no fee.

11

need to direct further resources to training and technical assistance.

28. KIND also expects to file more fee waiver applications, given the higher fees. It will no longer be a cost that KIND and pro bono attorneys are able to pay themselves, relative to the time that a fee waiver application typically requires. This diversion of resources to fee waiver requests will divert KIND attorneys and pro bono partners from time spent on the substantive component of the case. Depending on whether documentary evidence of the client's inability to pay is readily available, and on the client's facility with framing a statement to support the request, preparing a fee waiver request to the immigration court or BIA may take multiple times longer than the one-hour estimate noted on the BIA's fee waiver form, Form EOIR-26A.

29. KIND expects to continue to pay some fees for clients who are unable to pay, which will have an economic impact on the organization. The organization also plans to divert time and resources to fundraising efforts to cover clients' immigration court and BIA fees.

30. The costs of these filing fees, and the burden of additional fee waiver requests, would take away time and resources that KIND attorneys would otherwise spend on additional client matters; in the aggregate, they could reduce the number of new clients KIND is able to take on. The new costs and added steps entailed in fee waivers may also deter pro bono attorneys from taking on as many matters as they would otherwise, further diminishing the scope of legal services available to unaccompanied children.

I, Maria Odom, declare under penalty of perjury of the laws of the State of New York and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this __24__ day of December, 2020, in New York, New York.

_____
MARIA ODOM